IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-174-D

| | |
|---|---|
| SUE ELLA FERGUSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Sue Ella Ferguson ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for supplemental social security income. Plaintiff responded to Defendant's motion for judgment on the pleadings, Defendant replied,[1] and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-29] be denied, Defendant's Motion for Judgment on the Pleadings [DE-31] be granted, and the agency's final decision be upheld.

---

[1] On April 21, 2014, Defendant filed a motion for leave to file a surreply to address certain arguments contained in Plaintiff's response to Defendant's motion for judgment on the pleadings. Although designated a "surreply," Defendant's proposed filing is actually a reply to Plaintiff's response, for which leave of court is not required. Accordingly, Defendant's motion for leave [DE #35] is dismissed as moot and counsel is directed to file the document as a reply.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for supplemental social security income on May 11, 2010, alleging disability beginning March 17, 2009.[2] (Tr. 137, 235-38, 256.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 137, 153.) On March 1, 2012, a hearing was held before Administrative Law Judge McArthur Allen ("ALJ"), who issued an unfavorable ruling on April 13, 2012. (Tr. 45, 21-36.) Plaintiff's request for review by the Appeals Council was denied June 18, 2013, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks

---

[2] Plaintiff originally alleged her disability began November 9, 2006. (Tr. 235.) She later amended this date to March 17, 2009. (Tr. 256.)

omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since her application date of May 11, 2010. (Tr. 23.) Next, the ALJ determined Plaintiff has the following severe impairments: "degenerative disc disease, history of lumbar decompressive surgery, chronic obstructive pulmonary disease, diabetes mellitus, obesity, bipolar disorder, post-traumatic stress disorder, borderline personality disorder

and history of poly-substance (including cocaine) abuse." (*Id*.) The ALJ further determined that Plaintiff's hypertension was a non-severe impairment. (Tr. 24.) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24-26.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff has the ability to perform light work with the following restrictions:

> The claimant requires a sit/stand option, meaning the claimant would not be off-task but needs an occupation where she can sit or stand while performing tasks. The claimant can occasionally climb ramps and stairs, bend, balance, stoop, crawl, kneel, and crouch, but can never climb ropes, ladders or scaffolds. The claimant can frequently, but not constantly, grasp, finger, and hold using her right dominant hand. The claimant is further limited to simple, routine, repetitive tasks performed in a low production, low stress work environment. In addition, the claimant's work cannot involve complex decision-making, constant change, dealing with crisis situations, or contact with the general public.

(Tr. 26.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 28.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work as a cashier, waitress, product assembler, or cloth trimmer. (Tr. 34-35.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (Tr. 35-36.)

**IV. Plaintiff's Contentions**

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends that the ALJ erred in giving a treating physician's opinions little weight.

4

Additionally, Plaintiff asserts that the ALJ erred in relying upon the jobs identified by the vocational expert as responsive to the residual functional capacity at step five of the sequential evaluation process.

### A. Treating Physician's Opinion

Plaintiff first contends that the ALJ erred in giving Dr. Sid Hosseini's opinion little weight. Plaintiff began seeing physicians and therapists at Community Innovations in February 2008, one of which was Dr. Hosseini. (Tr. 751.) Plaintiff was diagnosed with bipolar disorder, post-traumatic stress disorder, borderline personality disorder, and a history of substance abuse. (Tr. 763, 905.)

Dr. Hosseini was Plaintiff's treating psychiatrist,[3] and on September 9, 2010, he provided a medical source statement concerning Plaintiff's ability to work. (Tr. 1007-10.) Dr. Hosseini noted that Plaintiff was markedly limited in sustained concentration and persistence in four areas: (1) "[t]he ability to maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)"; (2) "[t]he ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances"; (3) "[t]he ability to work in coordination with or proximity to others without being unduly distracted by them"; and (4) "[t]he ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 1008.) Dr. Hosseini additionally reported that Plaintiff had experienced a substantial loss in the ability to: (1) "understand, remember, and carry out simple instructions"; (2) "respond appropriately to

---

[3] Dr. Hosseini is a physician licensed in North Carolina, as well as a board certified psychiatrist. *Licensee Information*, North Carolina Medical Board, http://wwwapps.ncmedboard.org/Clients/NCBOM/Public/LicenseeInformation/Details.aspx?&EntityID=2072&PublicFile=1. (last visited May 15, 2014).

5

supervision, co-workers and usual work situations"; and (3) "deal with changes in a routine work setting." (Tr. 1009.) Dr. Hosseini went on to state, "Due to current diagnosis and symptoms, it is likely that Sue will have difficulty maintaining regular attendance or production in employment situations. She will require a lifetime of mental health treatment and prescription medication." (Tr. 1010.)

Generally, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig v. Chater*, 76 F.3d 585, 590 (1996)) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the

6

physician's familiarity with other information in the record. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." *Parker*, 792 F. Supp. 2d at 894 (citing 20 C.F.R. § 404.1527(e)(1)).

Here, the ALJ properly considered Dr. Hosseini's medical opinion contained in the medical source statement. The ALJ described in detail the inconsistencies between Dr. Hosseini's evaluation and the medical evidence in the record, especially those produced by other individuals treating Plaintiff at Community Innovations. The ALJ explained:

> The undersigned gives little weight to Dr. Hosseini's reported limitations as being neither bolstered nor supported by the overall record evidence, including treatment records from Community Innovations. As noted above, the claimant has had a positive response to treatment when medication compliant and abstinent from substance abuse. Notably, the claimant reported doing well in February 2010 with current treatment and her mood was found stable in September 2010 with a full affect and unremarkable psychomotor activity on mental status examination. The claimant's mood was subsequently found to be euthymic overall with no major changes in mood related symptoms on mental status examination in January 2011. The claimant was also found to have intact insight, judgment and cognition. The claimant continued to be found doing well in March and June. While the claimant reported a return of symptoms in September 2011, she had stopped taking her mood stabilizing medication and reported being stressed by her father's medical conditions. Subsequent therapy notes show a waxing and waning in the claimant's condition due to stressors, including her father's health, which was in decline. Notably, the claimant reported doing better in February 2012, although still processing grief issues. While the claimant indicated she had not wanted to bath[e] or go outside the house, she also reported she was going out on a date and had been chatting on internet social sites. The claimant also noted that if she could reduce arguments with her sons she would not have too many problems with irritable moods.

(Tr. 31-32.) Additionally, the ALJ noted the numerous visits Plaintiff made to Community Innovations and the inconsistencies between Dr. Hosseini's assessment and the examinations and impressions of Plaintiff's other mental health treatment providers. The ALJ thoroughly analyzed

7

the evidence in the medical record, which reflects an improvement in Plaintiff's mental impairments since she began seeking treatment at Community Innovations.

Notwithstanding the inconsistencies between Dr. Hosseini's evaluation and his medical records and the medical records of other mental health providers, the ALJ still attributed some weight to Dr. Hosseini's medical opinion. This is evident in the fact that the ALJ limited Plaintiff to light work and additionally restricted Plaintiff to: (1) performing simple, routine, repetitive tasks, (2) performing at a low production pace, (3) working in a low stress environment, (4) doing work not involving complex decision making, (5) no constant changes, (6) no dealing with crisis situations, and (7) no contact with the general public. (R. 26.) Thus, the ALJ appropriately weighed Dr. Hosseini's medical opinion in making his RFC determination.

**B.  Vocational Expert Testimony**

Next, Plaintiff argues that the ALJ erred in relying upon jobs identified by the vocational expert at step five of the sequential evaluation process. An ALJ may rely on a VE's testimony concerning the existence of jobs available in the state and national economies where that the VE's testimony is based upon or consistent with the *Dictionary of Occupational Titles*. *See Fisher v. Barnhart*, 181 Fed. App'x 359, 365 (4th Cir. 2006); *Gatling v. Astrue*, No. 2:11-CV-21-FL, 2012 WL 4357013, at *8 (E.D.N.C. Sept. 21, 2012) (citing *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)). Where, however, the VE's testimony is not supported by or consistent with the *Dictionary of Occupational Titles*, the ALJ must inquire into and elicit a reasonable explanation for any inconsistency before relying on the VE's testimony. *Fisher*, 181 F. App'x at 365. A VE's experience in job placement or career counseling may provide reasonable explanation for a VE's opinion. *Fisher*, 181 Fed. App'x at 365 (quoting SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)).

The ALJ in this case did not err in relying on the VE's testimony. Having found the existence of certain functional limitations, the ALJ presented the VE with a number of hypotheticals that incorporated those limitations. After the VE testified as to Plaintiff's past work, the ALJ asked:

> [A]ssume a hypothetical individual who has the same age, education and work experience as the claimant. And has an RFC to perform light exertional work. This individual should only have occasional climbing of stairs or ramps, only occasional bending, balancing, stooping, crawling, kneeling or crouching.
>
> This individual should never climb ropes, ladders or scaffolds due to prior surgical procedure. This individual should avoid occupations with hazardous machinery and concentrated exposure to fumes. Could the hypothetical individual that I just described perform any of claimant's past work either as she performed it or as it's being performed on the national economy?

(Tr. 98.) The VE responded that such an individual could perform Plaintiff's past work as a waitress, cashier, or assembler as generally performed. (*Id.*) The ALJ then asked a second hypothetical:

> Now assume further that this same individual would be limited to simple, routine, repetitive tasks. Would need to work in a job where there's low production, low stress.
>
> The occupation would require no complex decision making, constant change or dealing with crisis situations. Additionally this individual can have frequent but not constant grasping, fingering and holding with the right dominant hand. Does that change your earlier response?

(Tr. 98-99.) The VE answered that such an individual would only be able to perform Plaintiff's past work as a cashier. (Tr. 99.)

The ALJ next added an additional limitation that the hypothetical individual have no contact with the general public. (*Id.*) The VE responded that such an individual could not perform Plaintiff's past relevant work and provided the following jobs that such an individual could perform that are available in significant numbers in the state and national economies: small

9

parts assembler (DOT 706.684-022), electronics worker (DOT 726.687-010), and shipping receiving weigher (DOT 222.387-074). (*Id.*)

The ALJ then added a restriction requiring that such an individual be allowed a sit/stand option, meaning "this individual would work at an occupation where he or she could sit and or stand while performing the employer's task." (Tr. 100.) The VE answered that the three jobs noted would afford such a sit/stand option, but the number of available jobs would be reduced by seventy-five percent. (*Id.*) The ALJ then requested the VE to "assume this individual would miss work four or more days per month for various reasons." (*Id.*) The VE responded that no jobs would accommodate such an individual. (*Id.*)

Plaintiff's attorney then asked the VE to "assume in addition to the restrictions mentioned by the ALJ all the way up through the sit/stand option if you added instead of missing four days a week, if [the individual] were required to take frequent unscheduled breaks, would there be any jobs available." (Tr. 101.) The VE responded in the negative. (*Id.*) The attorney went on to inquire, "And . . . if you took out the missing four days or more a week and added the additional requirement that the claimant be allowed to lay down for one hour per day, would there be any jobs available?" (*Id.*) The VE again responded in the negative. (*Id.*)

The ALJ then inquired whether the VE's testimony was consistent with the *Dictionary of Occupational Titles*. (*Id.*) The VE responded, "Yes, Your Honor, with the exception of the sit/stand option which is not addressed by the DOT, as well as my testimony regarding absences or the need to lie down during the day. None of that is addressed by the DOT. And my testimony there is based on my knowledge, education, experience and training." (*Id.*)

As demonstrated by the testimony, the ALJ inquired whether the VE's testimony was consistent with the *Dictionary of Occupational Titles*. The ALJ elicited a reasonable explanation

10

for those limitations not addressed by the Dictionary of Occupational Titles and, based upon this explanation, expressly determined that the VE's testimony concerning the sit/stand option and work absences were based on the VE's knowledge, education, experience and training and were "consistent with the information contained in the *Dictionary of Occupational Titles*." (Tr. 36.) Thus, the ALJ did not err in relying on the jobs identified by the VE at step five.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-29] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-31] be GRANTED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 23rd day of June 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge